We will now turn to the last case on the calendar, 20-3835, United States v. Damon Chappelle. Let's see, we have Mr. Fiddleman. Yes, Your Honor. And you would like to reserve two minutes for rebuttal, is that right? Yes, thank you. Please proceed. May it please the Court, Jacob Fiddleman for the United States. I represent the government on this appeal. The district court erred in striking down part of the sentencing guidelines definition of crime of violence. The court's decision was directly contrary to the controlling precedent from this court, and in any event was wrong on the merits. So this panel should reverse the district court's decision, vacate the judgment, and remand for resentencing. May I ask you very politely, why are you here? Look, in this case, the district court was clearly trying to give a certain sentence to this particular person. You also have the problem of every court of appeals to address it has said that Hobbs Act robbery is not a crime of violence. This was not argued below, because it wasn't, but is being argued here. So that the most that you would get from us is to say we will not consider this, which every other court has said, because there's some suggestion possibly that we might do different, causing a tremendous risk. Send it back to the district court, which we know will say that, given what it's done before, and then we simply come back up. This is a case where you could have, in judgment, simply left it alone, because you're not the Department of Prosecution. You work for the Department of Justice. It's a perfectly sensible decision below. Leave it alone. I mean, I may be talking broadly, but judgment can be used. That's certainly right, Your Honor, and the government does exercise its judgment and discretion in choosing which appeals to pursue. In this case, Your Honor, the district court's decision is remarkably broad and will have substantial ramifications. It's already come up in at least one other case that I'm aware of in the Southern District of New York. It strikes down inclusion of inchoate offenses as crimes of violence across the board for the sentencing guidelines. Well, does it really do that? I mean, it can't do that with respect to controlled substance offenses. Jackson and these other cases have not been overruled, and neither the district court nor we, for that matter, would have any power to say the contrary, so isn't really the consequence – I mean, I guess in terms of stare decisis, well, for one thing, the district court's decision is not binding on anybody, right? Any other district court could look at this and say, well, thank you very much. I think that's a very interesting analysis. I go the other way. So, for one thing, it's really only invalidating it for this one case. This is not controlled substances, and there is a difference in the language with respect to controlled substances. And here, so this could be argued. But then, you know, the other thing could be that you confess error with respect to the underlying issue, which every other circuit, and just leave it alone. Or do you want us instead now to say, we want you to send us briefs on this other issue, decide this other issue, and leave the other one open? I mean, there are any number of ways. I guess the other thing just to note in terms of how this could all play out, and I think it's completely hypothetical on our part, but the guidelines are non-binding at this point. They are advisory. So there could perfectly well be a scenario where we could agree with the government, find that, and let's even say we reached and decided the subsidiary question about whether Hobbs Act robbery is robbery for purposes of career offenders. Let's say we rolled in your favor on that, too. It could go back to the district court, and I suppose the defense could ask for a downward variance or a downward departure. Certainly. Obviously, taking into account, I would presume you would make arguments about the tethering or grounding nature of the guidelines, and we don't know. Well, we do. Correct me. Did the district court say what she would or would not have done here? Yes, Your Honor, because this is a post-Davis remand for resentencing. The defendant was given a sentence more than twice the sentence that was imposed on remand at resentencing. So the district court cut by more than half the sentence imposed on the defendant solely because she now concluded he was no longer a career offender and the section 924C count had been vacated. So we don't know for sure whether she would continue to adhere to that because if we had a complete resentencing, she could obviously take advantage of things like post-sentencing rehabilitation or whatever, but you're saying that because the original sentencing already was post-Booker, there's no reason to think that she would be wanting to downwardly vary from the career offender guidelines. We can't say. We can't say. And this goes back to Judge Calabresi's point earlier, which is if the district court was attempting to get to a particular sentence, the proper path for the district court to take would have been to correctly calculate the guidelines. Why shouldn't we simply go along with every other circuit, even though it wasn't argued before, do this? Say, therefore, we don't need to worry. The argument that is made that this is different from the controlled substance is an interesting one. Then the district court does not remain opinion, which isn't binding anyway, but becomes particularly irrelevant, and we all go home. We don't send it back and come back and do three, four. And if I could just tag something on to Judge Calabresi's question, maybe you can answer them both together, is it your understanding that the other circuits have ruled that application note one is invalid with respect to Hobbs Act conspiracy, or is it your understanding that to the extent that there's other circuit case law, it's as to whether Hobbs Act robbery to begin with is not covered and, therefore, conspiracy to commit it would not be? What is your view of sort of where the other circuits stand on the point that Judge Calabresi is talking about? Yeah, so those are two distinct questions. I'll answer Judge Calabresi's question first. There are significant reasons why this Court should not take up the question of whether Hobbs Act robbery substantive is robbery categorically. First, it's not a straightforward question. The other circuits that have addressed this have done so in long and complicated decisions, and the government submits that there are significant reasons to think that under this Court's precedent, this Court might not come out the same way. In fact, we think this Court should not come out the same way. Those other circuits we respectfully submit did not answer the question correctly. This Court has repeatedly said that Hobbs Act robbery is the prototypical example of categorical robbery. And this Court has held that Hobbs Act robbery is a crime of violence before. But we've said that for 924C, right? Right. But the question of what constitutes— So the argument, right, that I presume we would hear from your adversary is there's the difference between property and person, right? And that we've got two different definitions. And, you know, presumably you'd argue that's not a—that's a distinction without a difference. Presumably the defense would argue, no, no, no, that's very meaningful. That's what these other circuits have said. No, Your Honor. This Court has said that Hobbs Act robbery is a prototypical example of categorical robbery, not a crime of violence under Section 924C. And categorical robbery is the question that the sentencing guidelines forced this Court to answer in the analysis. So particularly in this Court, this—the new argument about whether Hobbs Act robbery is a substantive crime of violence is particularly complicated. And it's also pending before another panel of this Court. So this Court— Do you remember offhand what case that is? It's the United States v. Cruz case, 20-3820, which has been briefed and is pending argument. It's pending argument still. That's right, Your Honor. The broader point here is— So that we are not bound by that. It is not that they have precedence over us. No. No, that's correct. It's not a matter of that panel having formal precedence before this panel. But it is a matter of that panel has the benefit of full briefing and a record and a district court analysis. And this is all in the broader context of this Court's well-settled practice to not reach out and address a new argument raised on appeal for the first time unless there's some important reason why the Court should exercise its discretion in that manner. And here, it would result in a— If we were to rule in your favor, hypothetically, and say, no, no, in court offenses, perfectly fine. The rug could be pulled out from under you shortly thereafter if another panel of this Court were to reject your view that Hobbs Act robbery to begin with is categorically robbery for the purposes. So then we could be spitting in the wind if we rule in your favor. We don't know. I don't think so, Your Honor. I think it's important where a district court has rendered a decision that does reach broadly to vacate it. It becomes close to a hypothetical decision. It becomes close to something reaching out to decide something that you want us to decide that isn't really going to be the issue of the case when we could perfectly well ask you to brief and ask the other side to brief this underlying question and decide ourselves this underlying question. We're perfectly capable of doing it. Yeah, we don't have a district court, but we'd have to brief ourselves on that question. And then we could avoid deciding this kind of difficult and nice question as to whether most of the courts that have gone along have done it either because they had direct precedence in the other circuit or reluctantly with respect to the language, with respect to controlled substances, which is different from the language here. It's a nasty question. So, Your Honor, and I know I'm over my time, but if it's permissible, I'd like to address the merits of the question here. This is a complicated case. It would not surprise me if we keep both of you up here a few extra minutes. Thank you, Your Honor. Respectfully, I submit it's not actually that complicated of a question, the question that was briefed by the government, because this court's precedent, while it's true that they relate to controlled substance offenses, their reasoning and wording make plain that they apply to both definitions. And that's rightfully so, because what Stinson requires of courts is to ask whether the broad definitions here foreclose the application note's commentary on them. And the court has time and time again in both controlled substances and crime of violence contexts. But the problem is when we invoke them in a controlled substance case, and we don't really discuss the why, and then, you know, you have Jackson, right? And then you have the subsequent cases, and then you have Tebb, and then you have Richardson that really gets a little bit more granular. Yes, it does. And says, you know what? Here's why. Not only is in Jackson we said this is perfectly consistent with the statute, but here we are in Richardson. Let me tell you why it also doesn't conflict with the language of the guideline. We focus on the prohibit word, right? And that's what your adversary says. Look, now that we're getting into the text of the guideline, turns out these things are phrased differently. So we may have had rather expansive dicta in our early cases that, you know, might push us instinctively in one direction. But it seems like aren't we required at this point when we're getting to that granular level to look at the ways in which the two definitions are worded? Now, maybe we would agree with you that difference, again, is a difference without a distinction without a difference, and is and prohibits doesn't matter. But don't we have to engage in that linguistic analysis? I don't think so, Your Honor. Stinson does not require the finding of a particular word as a textual hook to permit a guideline's application. No, but what those cases could be read as saying is what looks like a direct conflict and therefore that you don't need to follow, which is not a total conflict because of how the word prohibit could be read to be, and therefore stretching, we can go along with that. Yes, Your Honor. Well, here, where there's a word use, that isn't there. That is, I think you've got it backwards. But that's not what this court said. It's certainly what this court said in Richardson, but only as a cherry on top of the long line of cases that have already concluded that application note one is valid. And this court has applied Jackson in the crime of violence context, albeit not faced with this particular argument. The problem is those were times when the residual clause was in place. You have Brown that relies on the residual clause, right? And then Harrell that relies on Brown, right? So it's piggybacking on the residual clause analysis. So the problem is that if you have application note one that purports to interpret a definition that includes the residual clause, and in Brown we say that it's valid because of the residual clause, and then Harrell piggybacks on it. Nowadays we have a different version. There's no residual clause. You know, it knocks out that holding in Brown and Harrell. It doesn't leave you able to latch on to those. Those are just precedentially not particularly helpful to us, right? That's right. They would not formally require, you know, an en banc decision, for example. Well, right, but it just makes us ‑‑ it means we have a new question. We have a different question. We're not bound by them, and we have to figure this out on our own. Again, maybe ‑‑ If the court's language and reasoning and analysis from Jackson and Tabb did not already answer the question, which we submitted does. Why is there no difference from the government's point of view as between crime of violence and controlled substance offense? So, Your Honor ‑‑ They should be treated the same, and for these purposes, and why is what matters. They should be treated the same, and frankly, every other circuit has said they should be treated the same, too. They were doing it because they had previous precedence. Not in all cases. Several courts have gone en banc. The ‑‑ Post-residual clause? I don't know the answer to that question. I mean, that's the problem, right? You're interpreting different guidelines, so we need to compare apples and apples, and it just seems to me that we're dealing in a world without precedent right now, at least without binding precedent. It's the same guideline, and the purposes and clearly stated congressional and sentencing commission intent also apply in both circumstances. So, maybe, could you just go back to, I think Judge Chin's question is really the central thing here, right? In your view, putting aside precedent, whether we're bound or not, why are these functionally the same, such that there's enough interpretive room here that we're going to give deference to the commentary? Right. So, for several reasons. First, Stinson explains the analysis that this court is to engage in, and that case, the Supreme Court says that language that interprets a guideline or explains how it is to be applied is valid unless it is a plainly erroneous reading or directly inconsistent with the language it's interpreting. And that's a clear, for lack of a better word, sort of indication of the space that the sentencing commission has to comment on its own guidelines. Which, by the way, I would just add, is a remnant from an era when the guidelines were mandatory. And so, the analogy to an agency interpreting its own binding regulations, I think, has allowed, now post-Booker, even more room for this court to give the sentencing commission the room it needs to effectuate congressional purpose. Even so, the whole issue of deference under Kaiser and so on is much more in doubt. If you look to where the Supreme Court is going and how much deference we give to these things, it's exactly the opposite direction. Fair point, Your Honor. Although, I think, we addressed in our brief why we don't think Kaiser strictly changes the analysis here. And this court, although in a summary order, has already said that as well. So, the first reason is that Stinson's analysis that it directs is not an analysis at that minute level of word-by-word analysis. When you're interpreting the sentencing guidelines, you do it as a whole. You look at the overall language and framework that the commission has adopted. And you look at the clear intent in the commission's work and the underlying congressional intent in the mandate to the commission, particularly in the career offender context, where there is an express statutory instruction. Is there a second reason? So, your first reason is the Stinson analysis. Yes, the Stinson analysis. The second reason is that the text, the purpose, and the history of these provisions all support the position that the commission has taken in Application Note 1. So, the Sentencing Reform Act directed creation of the career offender guideline to ensure that repeat drug and violent offenders receive very long sentences. The current version of Application Note 1 was adopted in 1989 and has been applied and repeatedly re-upped to Congress, essentially, because although, as commentary, it need not go through notice and comment in congressional review, it factually has. So, that's sort of almost from the beginning, not quite the very beginning, but pretty close to the origin. Yes. The career offender guideline was adopted in 1987, and Application Note 1, this language, was adopted in 1989. And time and time again, the commission has sent it back to Congress for congressional review, even though it need not have done so. And Congress has not said, no, this interpretation of your own language is too far afield, we don't want to let you do it. And that's because it's accomplishing the purpose here. And, in fact, in tab, this Court said, although in the Controlled Substances Act, Controlled Substance Offense context, that a narrower interpretation of Application Note 1 and the scope of that definition would put this Court at odds with congressional intent behind the career offender predicates. And that logic applies here as well, because it is clear what Congress and the Sentencing Commission are intending to accomplish here. I think there can be no reasonable question as to the 30-year history of how these predicates have been analyzed and what the commission intends here, especially evidenced by the fact that the commission has proposed a clarifying amendment moving this above the line. There's no more commission right now to have any intentions or thoughts or desires. Exactly. Why don't you take just a minute to wrap up? We have kept you well beyond your time, and we appreciate that. But why don't you just give us a tying-up thought, and you'll still have two minutes to rebuttal. So my last thought here, Your Honor, which I mentioned briefly, would be that adopting the district court's distinction and analyzing the validity of Application Note 1 differently with respect to the two definitions would take this Court off of the side of the 9-3 circuit split that it's currently on, essentially, and create a third category where this Court would be the first and only circuit that has said, we view the Application Note 1's validity differently as to these two. And I think that is important because every other court has analyzed the validity of Application Note 1 as a single exercise in interpreting the definitions above the line for career offender predicates. And the vast majority of courts that have done so have upheld the validity of that Application Note, and half of them have done so in the crime of violence context, and half of them have done so in the controlled substance offense context. The district court's distinction here, we submit, while technically correct, and therefore the distinction also technically is correct with respect to all of this Court's prior decisions, is one without substance. Thank you very much. Thank you very much. We appreciate that. And why don't we hear from defense counsel, Mr. Urewitz. I'm looking the wrong way. I keep gesturing. I'm sorry? Mr. Urewitz. Thank you. You have 10 minutes. Thank you very much for your time. Before I get to my prepared argument, I just wanted to address the government's response to Judge Calabresi's initial question, which is, why is the government here? And as I understand the government's response is, well, yes, it may be true that the district court may give the same sentence here, but this decision is a problem for us in other cases. The solution is not to just try to get a square peg into a round hole. It's to go back to the commission. I know Judge Nardini recognized the commission is not out, but that doesn't mean the court should just come out with a decision that's not valid just to save the government. And I think to affirm the judgment of the district court, there are a number of ways to get there, as Your Honors have recognized, but I think the most straightforward way to do it is to answer one simple question. Is robbery conspiracy robbery? If it's not, then application note one isn't valid. And I'll get back to that question in a minute, but I think it's important, and I think Your Honors have recognized it. Let me ask you. That was not argued below, okay? That wasn't argued below. I'm sorry. Just to make sure that he heard or I heard you correctly, I think you suggested that the most straightforward issue for us to decide is whether robbery conspiracy is robbery, not whether Hobbs Act robbery is robbery, right? That's correct. I just want to make sure I heard you correctly. But I think it's important also to recognize what's not before this court. What's not before this court is whether narcotics conspiracy is an offense that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance. Courts have gone both ways on that question, but an affirmative answer to that question does not determine the result here. Well, we've already decided that. That's Jackson. That's Ted Richardson. That's water under the bridge. But that's not before this court. Right, but you're also not suggesting that your argument is that that doesn't matter. This involves different analysis. Yes, Your Honor, but I think it's important to note that there are even circuits that have concluded under that question with the language prohibits that it's still inconsistent. That may not be the best argument for you because that may mean that they've gone in a completely different direction. And we're not we are not under any gravitational pull of their decisions on the controlled substance. We have our different gravitation. Like I said, that's not a question the court doesn't have to answer. The second question that's not before this court is whether robbery conspiracy otherwise involves conduct that presents a serious potential risk of physical injury to another. In other words, even if prior cases of this court held that application note is not inconsistent with the guidelines, to the extent those decisions were relying on the residual clause, they're also irrelevant. And every decision that the government has pointed to in the crime of violence context involves that situation. So now turning back to the original question, I don't think that there could be a serious dispute that robbery conspiracy is not robbery. This court, in vacating Chappelle's conviction, 924C conviction, already held as much. It vacated the decision because it held that robbery conspiracy is not robbery and therefore it's not a crime of violence. That's not very helpful, right? That's two distinct analyses, right? One is a question of the categorical approach where we have to follow a strict elements, right? We have to follow certain rules because there we have Sixth Amendment issues and all that. Here we're talking about the guidelines where the commission, these are non-binding. We don't have these Sixth Amendment issues and the guidelines are not subject to the same strictures. So the commission would be perfectly well entitled to choose some other method. I mean, we know that from practice, right? So it's not a transitive property, right? If we have made a decision under 924C that does not necessarily transpose to the guidelines. That's correct, Your Honor, but the point is it's a very straightforward interpretive question. The language of the guidelines is whether it has to be a crime of offense that is robbery. And the question is, is conspiracy to commit a robbery robbery? And the answer is no, and I think that— My question is, does is robbery mean is substantive robbery or does is robbery a generic enough descriptor that it includes also inchoate versions of the offense? For example, attempt and conspiracy. Let me ask you this. Do we look at both elements of the definition used in the guidelines to give us general broader context here? And do we look at the fact that a 1 includes in the elements clause, has as an element the use, attempted use or threatened use, etc., And therefore, if they're interested in A1 in making sure that some inchoate crimes come in, then it's fair to assume that in A2 they were also at least open to the possibility or agnostic, but certainly not hostile to the inclusion of inchoate crimes, thereby creating an interpretive space that can be filled by application note 1. Maybe could you just address that? Maybe it's wrong. I think the district court in this case addressed that argument and said what we should infer from that is the fact that in subsection 1 they included inchoate offense. And when it came to the enumerated offenses, they did not. That demonstrates an intent not to include inchoate offenses when we're dealing with the enumerated offenses. Or does it mean that attempt might be okay, that you could split hairs in application note 1 and say, look, even if attempted robberies fall within, maybe there is enough space there. There's no suggestion that conspiracy is good. I think that I don't think you have to look to even subsection 1 to see that sometimes the commission felt that inchoate offenses could be covered. In your view, is aiding and abetting covered? I'm sorry? The part of application note 1 that talks about aiding and abetting, in your view, is that covered? Is that covered by robbery? Yeah. I'm trying to test the limits of the principle. How much of application note 1 gets thrown out? My recollection of this Court's decisions is that aiding and abetting is effectively included within the substance of offenses. I think that there may be even cases which held that an indictment that doesn't charge subsection 2, but it charges aiding and abetting, would be a valid substance. So you're saying principle liability is fine. Yes. Because everyone accepts that section 2 is simply a theory of liability for a substantive offense. Therefore, you don't really need this. It's surplusage. Yes. But, you know, it's helpful, interpretive, that's consistent with it. But now attempt, everyone agrees, attempt is different. Conspiracy is different. Hunter, say the Blockburger test. I think that would be if there was an indictment that charged a substantive robbery and the judge permitted the jury to convict of conspiracy, I think everybody would agree that was a constructive amendment. Different thing. And that offense. And I think that's really what James held. James was talking about burglary, but it said very clearly that attempted burglary is not burglary. And therefore, it had to go on and decided the case under the residual clause. And that's really what the court here is faced with. Is robbery conspiracy robbery? It's not.  One's a conspiratorial offense. What about the words threatened use? I mean, the definition also includes threatened use. And that certainly gets close to an inchoate offense. Conspiracy is arguably a threatened use. I'm not sure which language you're on. Well, the definition of crime of violence for B1.2A1, Judge Nardini was referring to this earlier. You know, it's the use, attempted use, or threatened use. But that's in Subsection 1. Right. Right. But that sort of helps us understand that inchoate offenses are not something that's completely remote. You're saying that conspiracy is different from inchoate offenses. But I think the point is, as the district court found, if the Sentencing Commission wanted to include under Subsection 2 inchoate offenses, they would have done so the same way they did under Subsection 1. They didn't do that. Well, but they did it. I guess that's one of the questions, right? For years and years and years, application no. 1 has been here. So isn't there an argument that the government makes, historically, they've always thought that this was so obvious that they didn't need to upgrade it. I mean, now there's talk about upgrading it because some judges have been coming out with decisions saying, you know what, we're going to invalidate application no. 1. So the commission said, oh, my gosh, I can't believe people are thinking that. Let's move it into the text so nobody thinks that mistakenly. But since 1989, it has been the case that it was established that these inchoate – that is robbery means – or isn't that the argument? I think that's the point. They didn't say that because under all those decisions since 1989, there was a residual clause. There was even more than that. There was commentary that I think referred specifically to robbery. So your view is that the application no. 1 might have been perfectly fine since 1989 back in the days when there was a residual clause. Exactly. But that's out the window, and now it doesn't make any sense. Exactly. Yes. Now we're stuck with – now we have a language of a guideline that refers very specifically to enumerated offenses. And therefore, the question is whether they fall or whether they're not. And it may be the case, and it sounds like when there is a commission, they may come around and change that. But that's not before this Court now. The question is under this language, what's the answer? And the answer plainly is robbery conspiracy is not robbery. And therefore, I think this Court can affirm. Besides, for the other reasons that I think the Court can affirm, as I pointed out earlier this week, the Third Circuit has already decided under a plain-errors standard that robbery is not a crime of violence under the guidelines. That Hobbs Act robbery, yes. Now let's just stop a moment on that because that was not argued before below. Right. And every circuit so far has come out the same way. And supposedly another circuit of our – another panel of our Court will be talking about that at some point in the future so that, as Judge Nardini said earlier, we might be deciding this other issue quite unnecessarily and have, he used the words, the rug pulled out under us. I'm not sure I understand what that means. I'll explain it afterwards. But isn't it sensible for us, given how complicated the issue that you all have been talking about for most of this, to say give us some briefing on this issue, the Hobbs Act robbery being that? It's before us. We can take it. There's nothing that says we can't take something just because it wasn't given to us. Another court that you didn't even need to give it because it decided your way, so there's no reason why, and let us decide that issue. And then if we decide it your way, we don't need to worry about the other one. If we decide it not that way, we'll be deciding something which is significant, creating a conflict, and that's fine, and then go on to the issue. But why not ask for a little bit more briefing on it? Your Honor, in this case, it's surreal that I'm on this side of the table. I don't have – ultimately, I feel like it's not as complicated an issue as Your Honor has said because I think that it's straightforward. I may agree with you. On the other hand, there's been a fair amount of – But I would say there is, I know, a policy of constitutional avoidance. In one sense, Stinson may be consistent with that. It's almost – there is the separation of powers. It is somewhat constitutional-based. There may be some logic to what Your Honor is suggesting that maybe if we're going to affirm – I hope so. If we're going to affirm, we should affirm on the least controversial aspect of it and just ask for briefings on that. I'm more than happy to brief it, but I think ultimately it's going to produce the same decision. We'll let you know afterwards whether we're asking anyone for supplemental briefs. Thank you very much. We appreciate the argument. We'll hear from the government now. You have two minutes for rebuttal. Counsel, can I just ask a question? If we were to rule in your favor, would that decision necessarily be limited to Hobbs Act robbery conspiracy or would it extend of necessity to all of the enumerated crimes in A2? And I guess the mirror would be, you know, if your adversary prevails, would all defendants necessarily, I don't know, charged with murder conspiracy also face or would they not be subject to having that offense triggering the career offender guideline? Thank you, Your Honor, because that was the first point that I was going to make here, which is that it actually ties back to the most recent point too, which is the reason why this court should address in the first instance here without looking at an alternative question, the issue of the district court's decision is because of its scope. A ruling that Hobbs Act robbery is not robbery does not address the district court's decision. The application note one, which purports to bring in inchoate offenses to the definition, is invalid. As to all enumerated offenses, as to any offense that substantively falls under the elements clause, this was a very broad and categorical striking down of a portion of the definition. So even if we could escape this, the inchoate offense question in this case by going to Hobbs Act robbery, this court collectively is not going to be able to escape the question. I suppose unless in some intervening period of time the sentencing commission were reconstituted and maybe they did amend it this way, barring those unforeseen circumstances, the inchoate offense question is going to land in our laps somehow or another. On the other hand, it would land in our laps in a case which would be much more in point. You know, we could ask about those specific issues and see how it went rather than be driven by this particular twist in a situation of this particular defendant and of the underlying question of whether the sentence can stand for other reasons at all. Which is why I go back to my original one. I mean, you keep telling us as if a decision by a single district court is all that important. Frankly, I don't care that much about what a single district court says. Just as the Supreme Court doesn't care a damn about what a single court of appeals says. Frankly, Your Honor, I think what the government is asking for here is in many ways sort of a grant, vacate, and remand, because instead of dealing with case-specific reasons to support the sentence, the district court came out with a broad and sweeping proposition as to the validity of the sentencing guidelines. And this court can and should say, that's wrong. The sentencing guidelines as written are valid. Feel free to readdress the sentencing issues in the first instance as to the fact-specific issues. Including the other issues that we've been talking about. Certainly. The defendant is free to argue that on remand for the first time. But the district court's decision here is so broad, and we submit incorrect, and has already been cited. While certainly it may not be binding on this court, it is functionally important to others. Is it possible for us to do something peculiar? Like, say, we do not decide this issue, whether you were correct or not, because you shouldn't have reached this issue until you had first decided the underlying question about whether Hobbes had properties or not at all. And so we send it back to you. We remand without vacating yet to consider that issue first. If you don't want us to consider it first. Well, Your Honor, I don't think so. I don't think it's fair to characterize the district court as having erred in not addressing this other issue first because it was never raised. It's raised for the first time on appeal. Well, I'm not saying that they, you know, I'm not interested in blaming or not blaming. I'm saying this issue was there, and it ought to have been considered first. Because it is, you know, logically it comes up first. I mean, logically it is there first. And there's something very peculiar to me to talk about this issue, which you say has possible dramatic consequences here, which goes this way and that way, when it may not be there at all. It's just not logical to me. Your Honor, I understand the logic of what you're proposing. There is something sort of antecedent about asking whether the substantive version qualifies. But I would submit respectfully that the appropriate thing to do in that case is to vacate and remand for consideration of that question rather than do some sort of Jacobson remand. That requires us to decide the subsidiary issue before we decide the original issue. And that's what I, you know. Not necessarily. The question is, which is really if both of them are necessary decisions and the judge just picked one and she knew that deciding one issue would lead to, would answer the question, can we really fault her for having picked one as opposed to the other question? That's right, Your Honor. And it's – there are ramifications to the decision, even if it's not binding here. And I'd like to very briefly take a minute, if I may. You know what? That's fine. We appreciate the arguments that you both have raised. We've kept you both well beyond your time. We're greatly appreciative. These are very, very helpful arguments that you've all brought to us. So we will take the case under advisement. Thank you very much. Thank you very much. And seeing that we have run through the calendar, I would ask the courtroom deputy to adjourn. Court is adjourned. Thank you.